PARIENTE, J.,
specially concurring.
I have struggled with this case. On the one hand, the conduct giving rise to this petition clearly undermines the public’s trust in the judicial system. On the other hand, as former Justice Raoul Cantero testified, William Castro’s case is “one where [he has] seen more rehabilitation over a greater period of time than any other case.” Indeed, it was not just Raoul Cantero who testified on Castro’s behalf. Castro submitted letters from 190 individuals and presented many witnesses who testified in favor of his readmission to the Florida Bar, all setting forth specific examples of how he has demonstrated extraordinary conduct.
The witnesses who testified at Castro’s hearing included many leaders in the legal and judicial community, including: Arturo Alvarez; Francisco Angones; David Roth-man; Circuit Judge Beatrice Butchko; Circuit Judge Stanford Blake; Circuit Judge Diane Ward; and now Circuit Judge Victoria Brennan. Each described Castro as a changed person and recom *703 mended his readmission without hesitancy. Judge Blake, who has known Castro since he was a young attorney, testified that he was “absolutely convinced Willie is a very good person that made a very bad mistake.”
The evidence established that Castro logged over 13,000 hours of community service during the past eighteen years— equivalent to an impressive 700 hours of service per year. He has volunteered for the Guardian ad Litem (GAL) program, where he has been described as a “wonderful asset.” The Senior Staff Attorney of the criminal court’s GAL program recounted several different cases on which Castro served. She believed that Castro’s efforts in one GAL case saved a child’s life and further described him as a “relentless advocate” and “meticulous.”
Castro is also a licensed foster-care parent, and he and his wife later adopted each of the three children they had fostered. The judge who approved the adoptions described how she “grew to admire and respect Willie” and had “no doubt that he would be a very positive member of the Bar.” Castro has led CLE seminars in which he has taken “accountability for what he has done.” One witness who previously worked with Castro in organizing a seminar involving ethics and the law stated that during the time she has known him, Castro made her “want to be a better lawyer.” Another witness testified as to his service to the community, and especially to children, describing him as a “person that is just doing everything that he can to be able to give to people, to give of himself, of his time, of his talent, and to really make a difference in people’s lives.” Further, Castro has organized programs for migrant children, and one witness testified that these migrant children “wouldn’t have anything or much if it wasn’t for the efforts that Willie Castro had done.”
By all accounts, Castro has lived an exemplary life since his criminal charges, felony convictions, and prison sentence. Based on what I perceive to be overwhelming evidence of his rehabilitation, I would state that Castro has demonstrated all seven elements of rehabilitation required by Rule 3-13 of the Bar Admission Rules for admission when the applicant has . previously engaged in disqualifying conduct. Given his rehabilitation, the question I have struggled with is whether the conduct that led to Castro’s ten-year disbarment qualifies as the type of conduct for which no amount of rehabilitation will ever suffice to earn him readmission to the Bar.
In essence, the Court’s pronouncement today is a decision to change Castro’s sanction of a ten-year disbarment imposed in 1994 to one of a permanent disbarment.[1] After careful consideration of the circumstances involved here, and despite the evidence of Castro’s rehabilitation, I have ultimately come down on the side of agreeing with the Board and the majority that the crimes in this case — egregious acts of corruption, which stem from the bribery of a judge and the receipt of multiple kickbacks from that judge over an extensive period of time — so dishonored our judicial system that “no demonstration of rehabilitation would ever suffice to allow Castro’s readmission to the legal profession.” Majority op. at 702. In reaching this decision, I have considered the other side of this equation — that it was the judge who approached Castro and that there is no evi *704 dence Castro handled the cases to which he was appointed in any way other than in a professional manner. Nevertheless, I am unable to cast aside my concern that the essential illegality at issue here goes to the very core of our public’s trust and confidence in the judicial system.
Although this judgment of permanent disbarment may appear to be harsh, we must always remember that the practice of law is not a right but a privilege, and it was Castro’s own illegal actions that caused his downfall. I would hope that Castro will still be motivated to continue his involvement in the wonderful community activities that have been described by his scores of supporters and that he will continue to teach others the lessons that he has learned. While these lessons may be too late in his case, Castro’s efforts may encourage, inspire, .and motivate others to be better lawyers and human beings, all of whom may look at each day as an opportunity to give back to our community in a meaningful way.

. I do not believe a sanction of permanent disbarment is necessarily warranted in all situations where applicants commit felonies pri- or to admission. In my view, the imposition of the sanction of permanent disbarment can vary depending on the type of felony and the circumstances under which it was committed.